**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**LEVI E. WILLIS II, Trustee,**

**and**

**TOYA WILLIAMS, Trustee,**

**and**

**PATRICIA ROUSE, Trustee,**

        **Plaintiffs,**

**v.**                         **Civil Action No. 2:11cv193**

**WELLS FARGO BANK, N.A.,**

        **Defendant.**

```
               FILED

           JAN 1 2 2012

        CLERK, US DISTRICT COURT
             NORFOLK, VA
```

## OPINION AND ORDER

This matter is before the Court on cross motions for summary judgment. After examination of the briefs and record, the Court determines that a hearing on the instant motions is unnecessary, as the facts and legal arguments are adequately presented, and the decisional process would not be aided significantly by oral argument. Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). For the reasons stated herein, the Court **GRANTS** the summary judgment motion filed by Wells Fargo Bank, N.A., ("Wells Fargo" or "Defendant"), and **DENIES** the summary judgment motion filed by Levi E. Willis, II, Toya Williams, and Patricia Rouse (collectively "Plaintiffs").

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. General Background

The majority of the relevant facts in this case are undisputed, and most of the facts reproduced below were stipulated to by the parties in the Joint Final Pretrial Order. (Dkt. No. 36). On August 6, 2008, Barbara Turner purchased a $400,000 cashier's check from Wells Fargo[1] on behalf of the religious organization Friendship Temple, Inc. ("Friendship Temple"). Ms. Turner was authorized to transact business on the Friendship Temple bank account used to purchase the check (account ending 3793). The August 6, 2008 cashier's check was intended to be transferred to the Garden of Prayer Temple, Church of God in Christ ("Garden of Prayer")[2] as payment for a church building in Portsmouth, Virginia.

On August 22, 2008, Barbara Turner appeared at a Wells Fargo bank branch in Norfolk, Virginia, and reported that the August 6, 2008 cashier's check had been misplaced. Ms. Turner requested that Wells Fargo issue a replacement check. While at

---

[1] Ms. Turner actually purchased the check from Wachovia Bank, N.A.; however, Defendant Wells Fargo is the successor to Wachovia. Accordingly, for consistency, the Court refers only to "Wells Fargo." Additionally, although the filings before the Court discuss several cashier's checks purchased by Friendship Temple prior to August 6, 2008, because such checks are not directly relevant to the instant dispute, the Court refers to the August 6, 2008 check as the "original check."

[2] Garden of Prayer is also referred to as "Garden of Prayer Temple" and "Garden of Prayer Worship Center" in the relevant documents before the Court.

the Wells Fargo bank branch, Ms. Turner was helped by Linda Morton, a Wells Fargo employee. Ms. Morton verified that the check reported as lost had not been cashed and helped Ms. Turner complete the necessary paperwork to place a stop payment on such check and obtain a replacement. After presenting her driver's license for identification purposes and signing two separate sworn statements, Ms. Turner was issued a replacement check for $400,000 payable to Garden of Prayer. On that same day, Ms. Turner endorsed the newly issued check "not used for purpose intended . . ." and re-deposited the check into Friendship Temple's account ending 3793. On September 3, 2008, Friendship Temple transferred $400,000 from the 3793 account into a second Friendship Temple account ending 2772. Several large checks were later paid from the 2722 account, and it was closed on April 30, 2009.

During August 2008, the month when both the original and replacement checks were issued by Wells Fargo, Bishop Levi Willis Sr. ("Bishop Willis") was the pastor and Trustee of Garden of Prayer.[3] Bishop Willis passed away on February 20, 2009, and for some period of time prior to his death, "was

---

[3] Although not relevant to the pending motions, it appears that Ms. Turner, and Joseph and Katrina Chase, the two pastors of Friendship Temple, were closely acquainted with Bishop Willis. Such association may have been what ultimately permitted Ms. Turner and/or Garden of Prayer to succeed in the scheme that forms the backdrop to the instant dispute.

mentally unable to handle his finances." (Final Pretrial Order, Dkt. No. 36). Sometime after Bishop Willis' February 20, 2009 death, his son Bishop Levi Willis, II discovered the original August 6, 2008 cashier's check. Bishop Levi Willis, II attempted to cash such cashier's check on March 2, 2010. However, Wells Fargo refused to honor the check.

Wells Fargo's refusal to honor the original check prompted Plaintiffs to file the instant suit, which was originally filed in the Circuit Court of the City of Norfolk, Virginia. Subsequent to removal to the United States District Court for the Eastern District of Virginia, Wells Fargo filed its summary judgment motion asserting that Plaintiffs cannot recover from Wells Fargo because it followed the required procedures for issuing a replacement cashier's check. Plaintiffs opposed such motion on the ground that additional discovery was necessary, but thereafter filed a cross motion for summary judgment alleging that the record was sufficient to support judgment in Plaintiffs' favor because Wells Fargo purportedly admitted that it improperly issued the replacement check with knowledge that the original check was transferred to Bishop Willis of Garden of Prayer. Both motions are fully briefed and are ripe for review.

## B. Events of August 22, 2008

The parties agree that the outcome of the case turns on the events of August 22, 2008, the day that Ms. Turner obtained the

replacement $400,000 check from Wells Fargo. As stated above, Wells Fargo employee Linda Morton processed Barbara Turner's request for a new cashier's check. Ms. Morton kept the relevant records from the cancellation/reissuance transaction, and such documents are now before the Court.

Two of the relevant documents are titled "Affidavit of Loss" and "Declaration of Lost, Stolen or Destroyed Official Check and Indemnification Agreement." The Affidavit of Loss, which was filled out by Ms. Morton, and then reviewed and sworn to by Ms. Turner, states as follows:

> (1) "Barbara Ann Turner . . . is <u>the owner of or is acting in a representative or fiduciary capacity</u> with respect to" the $400,000 cashier's check payable to Garden of Prayer, issued on August 6, 2008.

> (2) Such check was "lost, stolen, destroyed or misplaced under the following circumstances: <u>Check was presented to the minister and he has misplaced the check having no control of item</u> . . . ."

> (3) Ms. Turner made a diligent search for the check, and she "was <u>the unconditional owner of Original, at the time of loss</u>, and is entitled to the full and exclusive possession thereof; that <u>neither the Original nor the rights of Deponent therein have</u>, in whole or in part, <u>been assigned, transferred</u>, . . . <u>or otherwise disposed of</u>, in any manner whatsoever, and that no person, firm or corporation other than Deponent [and other individuals expressly listed on the form] has any right, title, claim, equity or interest in, to, or respecting Original, or the proceeds thereof . . . ."

> (4) Only three individuals, identified by name in the affidavit, have any interest in the original check; they are: "Barbara Ann Turner – Church Trustee"; "Joseph Chase – pastor" and "Katrina Chase – co-pastor."

(Dkt. No. 21, Ex.1 at WF019) (emphasis added). The "Declaration of Lost, Stolen or Destroyed Official Check and Indemnification Agreement," which is also signed by Ms. Turner, indicates the following:

> (1) "Barbara Ann Turner" is the Declarant.
>
> (2) "Declarant is the remitter of the Check purchased from [Wells Fargo]. Declarant lost possession of the check. Such loss of possession <u>was not the result of a transfer by Declarant</u> or a lawful seizure."
>
> (3) "<u>Neither Declarant nor any authorized person</u> on his/her/its behalf endorsed or <u>transferred the Check</u>."
>
> (4) "<u>To the extent that anyone has possession of the Check: such possession is wrongful</u>, and any person who may have possession of the Check is unknown to Declarant . . . ."
>
> (5) "Declarant warrants the truth of the statements made herein and makes these statements under penalty of perjury and to induce Bank to pay the amount of the Check to Declarant."

(Dkt. No. 21, Ex.1 at WF022) (emphasis added). In addition to Ms. Turner's sworn statements, the Court has before it a sworn affidavit executed by Linda Morton. Ms. Morton's affidavit states as follows:

> (1) That on August 22, 2008, Ms. Turner "entered the bank and advised that she needed to place a stop payment on a [Wells Fargo] cashier's check."
>
> (2) Ms. Morton "was the person who waited on Ms. Turner" and Ms. Morton examined and copied Ms. Turner's driver's license.
>
> (3) "Ms. Turner advised that the cashier's check . . . in the amount of $400,000 made payable to the Garden of Prayer Worship Center had been lost" and that "<u>the minister had misplaced the check</u>."

(4) "[Ms. Morton] presented Ms. Turner with a Declaration of Lost, Stolen or Destroyed Official Check and Indemnification Agreement, as well as an Affidavit of Loss. [Ms. Morton] then filled out those documents, asked [Ms. Turner] to review them, and be certain that everything [Ms. Morton] had written was correct. <u>Ms. Turner reviewed the documents, signed them, and swore that the statements on the documents were true.</u> Thereafter, [Ms. Morton] notarized [Ms. Turner's] signature on both documents."

(5) Ms. Morton arranged to have a new cashier's check "in the amount of $400,000 made payable to the Garden of Prayer Worship Center issued as a replacement check for the check that had been lost."

(Dkt. No. 21) (emphasis added).

## II. STANDARD OF REVIEW

According to the Federal Rules of Civil Procedure, a district court "shall grant" summary judgment in favor of a movant if such party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some alleged factual dispute between the parties "will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 247-48 (1986). If the pleadings, affidavits, deposition transcripts, and other discovery materials demonstrate that there is no genuine dispute as to a material fact, "it is the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"

7

Hostettler v. Auto-Owners Ins. Co., 744 F. Supp. 2d 543, 545 (E.D. Va. 2010) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Once the movant has properly filed evidence supporting summary judgment, the non-moving party may not rest upon the mere allegations of the pleadings, but instead must set forth specific facts in the form of exhibits and sworn affidavits illustrating a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390, 393-94 (4th Cir. 1994). At that point, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. In doing so, the judge must construe the facts in the light most favorable to the non-moving party, and may not make credibility determinations. Id. at 255; Holland v. Wash. Homes, Inc., 487 F.3d 208, 213 (4th Cir. 2007). Although the evidence is construed in favor of the non-movant, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].'" Drewitt, 999 F.2d at 778 (quoting Anderson, 477 U.S. at 252); see Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not

sufficient to defeat" a properly supported summary judgment motion); Anderson, 477 U.S. at 249-50 (indicating that if the non-movant's evidence "is merely colorable, or is not significantly probative, summary judgment may be granted") (internal citations omitted).

When confronted with cross-motions for summary judgment, "the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). In addressing cross-motions, "the standards upon which the Court evaluates the motions for summary judgment do not change." Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991).

### III. DISCUSSION

#### A. Issuance of a Replacement Cashier's Check

The banking transaction involving Wells Fargo's issuance of a replacement cashier's check to Ms. Turner on August 22, 2008, is governed by Virginia Statute. See Va. Code. Ann. § 8.3A-312. Wells Fargo argues that it complied with all statutory requirements and that Plaintiffs/Garden of Prayer can therefore only recover from Ms. Turner or Friendship Temple. Plaintiffs, on the other hand, contend that Wells Fargo negligently issued a replacement check after it was informed that Ms. Turner had transferred the check to Bishop Levi Willis of Garden of Prayer.

For the reasons discussed below, the Court finds that Wells
Fargo has demonstrated full compliance with the applicable
statute, and therefore, cannot be held liable as a matter of
law.

Title 8.3A of the Code of Virginia governs negotiable
instruments and includes a subpart titled "Enforcement of
Instruments" within which there is a section titled "Lost,
destroyed, or stolen cashier's check, teller's check or
certified check." Va. Code. Ann. § 8.3A-312. Such Code section
states, in relevant part:

> A claimant[4] may assert a claim to the amount of a
> [cashier's] check by a communication to the obligated
> bank describing the check with reasonable certainty
> and requesting payment of the amount of the check, if
> (i) the claimant is the drawer or payee of a certified
> check or the remitter or payee of a cashier's check or
> teller's check, (ii) the communication contains or is
> accompanied by a declaration of loss[5] of the claimant
> with respect to the check, (iii) the communication is
> received at a time and in a manner affording the bank
> a reasonable time to act on it before the check is

---

[4] "Claimant" is defined as: "a person who claims the right to
receive the amount of a cashier's check, teller's check, or
certified check that was lost, destroyed, or stolen." Va. Code.
Ann. § 8.3A-312(a)(1).

[5] "Declaration of loss" is defined as: "a written statement, made
under penalty of perjury, to the effect that (i) the declarer
lost possession of a check, (ii) the declarer is . . . the
remitter or payee of the check, in the case of a cashier's check
or teller's check, (iii) the loss of possession was not the
result of a transfer by the declarer or a lawful seizure, and
(iv) the declarer cannot reasonably obtain possession of the
check because the check was destroyed, its whereabouts cannot be
determined, or it is in the wrongful possession of an unknown
person or a person that cannot be found or is not amenable to
service of process." Va. Code. Ann. § 8.3A-312(a)(3).

> paid, and (iv) the claimant provides reasonable
> identification if requested by the obligated bank.
> Delivery of a declaration of loss is a warranty of the
> truth of the statements made in the declaration.

Va. Code. Ann. § 8.3A-312(b). The Code goes on to state that if

the above requirements are met, a claim becomes enforceable on

the later of the date the claim is made or ninety days after the

date of the cashier's check. § 8.3A-312(b)(1). Once a claim

becomes enforceable, "the obligated bank becomes obliged to pay

the amount of the check to the claimant if payment of the check

has not been made . . . ." § 8.3A-312(b)(4) (emphasis added).

In such circumstances, if the bank pays the enforceable claim,

"the obligated bank is not obliged to pay the check" because

"payment to the claimant discharges all liability of the

obligated bank with respect to the check." § 8.3A-312(b)(3)-

(4). (emphasis added). Although the bank's liability is fully

discharged on such facts, the Code expressly recognizes that

"the claimant" remains liable to "the person having rights of a

holder in due course if the check is dishonored" by the bank.

§ 8.3A-312(c).

### B. Wells Fargo's Summary Judgment Motion

The evidence presented by Wells Fargo in support of its

summary judgment motion demonstrates the absence of a dispute as

to a material fact. Specifically, Wells Fargo advances the two

sworn documents executed by Ms. Turner as well as an affidavit

executed by Ms. Morton, the Wells Fargo employee that helped Ms. Turner on August 22, 2008.   Such sworn statements demonstrate that: (1) Ms. Turner reported to Wells Fargo that she presented the check to "the minister" and he misplaced it   (Dkt. No. 21); (2) Ms. Turner represented that she was "<u>the unconditional owner of Original [check], at the time of loss</u>" and that "<u>neither the Original nor the rights of Deponent therein have . . . been assigned [or] transferred . . .</u>"   (Dkt. No. 21, Ex.1 at WF019); (3) The only three individuals that have any interest in the original check are Ms. Turner and two pastors at <u>her church</u> (<u>Id.</u>); (4) Ms. Turner was the "remitter" of the original check, she lost possession of it, and "[s]uch loss of possession <u>was not the result of a transfer . . . .</u>"   (Dkt. No. 21, Ex.1 at WF022); and (5) "<u>To the extent that anyone has possession of the Check: such possession is wrongful . . . .</u>"   (<u>Id.</u>) (emphasis added).

Such sworn statements demonstrate Wells Fargo's compliance with the above-referenced statutory requirements for receiving and paying an enforceable claim.   Ms. Turner was the remitter of the original check, she completed a sworn declaration of loss, the bank had a reasonable time to act, and Ms. Turner provided proof of her identification at the bank's request.   <u>See</u> Va. Code. Ann. § 8.3A-312(b).   As Ms. Turner made her claim less than ninety days after the date of the August 6, 2008, cashier's

check, her claim became enforceable on "the ninetieth day following the date of the check." Va. Code. Ann. § 8.3A-312(b)(1). Ms. Turner's claim therefore became enforceable in early November of 2008, and the original check was not presented for payment until March of 2010, more than a year later. As a result, in November of 2008, not only was Wells Fargo "obliged to pay the amount of the check to the claimant [because] payment of the check had[d] not been made," but such "payment to the claimant discharge[d] all liability of [Wells Fargo] with respect to the check." Va. Code. Ann. § 8.3A-312(b)(4). As Wells Fargo's liability was fully discharged and it later refused to honor the original check, any holder in due course of such check must seek recovery from the "claimant," not the bank. Va. Code. Ann. § 8.3A-312(c).

In opposition to Wells Fargo's summary judgment motion, Plaintiffs contend that there is a dispute as to a material fact regarding Ms. Turner's statements to Ms. Morton/Wells Fargo on August 22, 2008. Plaintiffs, however, fail to set forth facts in the form of exhibits or sworn affidavits illustrating a genuine issue for trial. Celotex, 477 U.S. at 322-24. Rather, Plaintiffs argue that additional discovery is necessary and that depositions might reveal evidence that would demonstrate a dispute as to a material fact. But as Plaintiffs provide no explanation for their failure to depose witnesses prior to the

13

discovery cutoff, their recent motion to extend discovery deadlines was denied. (Dkt. No. 35).[6] Absent such deposition testimony, or any other evidence, Plaintiffs' cannot demonstrate a genuine dispute as to a material fact. See Francis, 452 F.3d at 308 ("Mere unsupported speculation is not sufficient to defeat" a properly supported summary judgment motion).

Similarly, Plaintiffs fail in their attempt to establish a dispute as to a material fact based on the affidavits relied on by Wells Fargo. As discussed above, the evidence before the Court regarding the banking transaction at issue includes two documents sworn to by Ms. Turner. Numerous statements within Ms. Turner's affidavits, some pre-printed, some filled out during Ms. Turner's discussion with Ms. Morton, indicate that the allegedly "lost" check had not been transferred, that Ms. Turner was the unconditional owner of the check at the time of loss, and that the only individuals that had any rights to such check were Ms. Turner, and Joseph and Katrina Chase, the two pastors at Ms. Turner's church. Plaintiffs, however, argue that Ms. Turner's statement to Wells Fargo that she gave the check "to the minister" refers to a transfer of the check to Bishop Willis of Garden of Prayer, and not a reference to Ms. Turner presenting the check to Joseph Chase of Friendship Temple.

---

[6] Plaintiffs' recently-filed motion to extend discovery deadlines was not filed until after both Defendant's and Plaintiffs' motions for summary judgment were fully briefed.

14

Ms. Turner's statement, referencing an unnamed "minister," standing alone, is insufficient to contradict the numerous clear statements on Ms. Turner's affidavits.    Not only do such affidavits include numerous pre-printed statements indicating that the "lost" check had not been transferred, but Ms. Turner expressly indicated that no one other than her church's pastors and herself had any interest in the "lost" check.    Accordingly, Ms. Turner's sworn statements that, prior to any transfers, the check "was presented to the minister, and he has misplaced the check" directly contradict Plaintiffs theory that such check was transferred to another minister at a different church, and that such minister lost the check.    Because Plaintiffs offer nothing but unsupported speculation as to the August 22, 2008 conversation between Ms. Turner and Ms. Morton, and because Plaintiffs have failed to submit any contradictory evidence, summary judgment in favor of Wells Fargo is appropriate.    See Anderson, 477 U.S. at 249-50 (indicating that for a genuine dispute to exist there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," and if "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted").

In concluding that Wells Fargo's motion is meritorious, the Court notes that such finding does not turn on whether Ms. Turner actually transferred the check to Bishop Willis prior to

15

reporting the check lost on August 22, 2008, but instead turns
solely on the representations Ms. Turner made to Wells Fargo.
The controlling statute is clear, if a <u>sworn claim</u> made by a
<u>qualifying claimant</u> becomes enforceable after ninety days and
the original check has not yet been presented for payment, the
bank discharges its liability by paying the claimant; at that
point, even a holder in due course has no rights against the
bank.  Va. Code Ann. 8.3A-312.  The Official Comments to the
UCC, which are not binding law, but "do represent powerful
dicta," <u>Girard Trust Co. v. Stricker</u>, 458 F.2d 435, 437 (4th
Cir. 1972),[7] similarly demonstrate that a bank is discharged from
liability when it relies on sworn statements made by a
qualifying claimant.  Official Comment 3 states, in relevant
part:

> An obligated bank that pays the amount of a check to a
> claimant under subsection (b)(4) is discharged of all
> liability on the check so long as the assertion of the
> claim meets the requirements of subsection (b); . . .
> [thus], if the claimant <u>falsely alleges a loss</u> that in
> fact did not occur, <u>the bank . . . may rely on the</u>
> <u>declaration of loss.</u> . . .  The obligated bank is <u>not</u>

---

[7] <u>See</u> <u>Halifax Corp. v. First Union Nat'l Bank</u>, 262 Va. 91, 101-
02, 546 S.E.2d 696, 703 (2001) (describing the UCC Official
Comments as "helpful in discerning legislative intent" but
noting that such comments should not become a device for
modifying the language of the Code itself); <u>GMAC v. Horne</u>, 390
B.R. 191, 199 (E.D. Va. 2008) ("[Under Virginia law] [t]he
official comments to the UCC are helpful guides to
interpretation of the statutory text."); <u>Barnette v. Brook Road,</u>
<u>Inc.</u>, 457 F. Supp. 2d 647, 659 (E.D. Va. 2006) (describing the
UCC Official comments as "persuasive dicta").

<u>required to determine</u> whether a claimant who complies
with subsection (b) is acting wrongfully.

Va. Code Ann. § 8.3A-312, UCC Official Comment 3 (emphasis
added).

Plaintiffs' filings before the Court similarly appear to
acknowledge that a bank has no duty to investigate the veracity
of sworn statements made by a qualifying claimant.   Rather, the
inclusion of the ninety-day period that must run before a claim
becomes enforceable generally allows a holder in due course to
avoid being defrauded by a claimant acting wrongfully.
Unfortunately, here, the original check was not presented for
payment until well more than a year after Ms. Turner's claim
became enforceable—long after the ninety day window.

For all the reasons discussed above, Defendant's motion for
summary judgment is granted.

### C. Plaintiffs' Summary Judgment Motion

Plaintiffs' summary judgment motion fails to demonstrate
that Plaintiffs are entitled to judgment and further fails to
demonstrate the existence of a material fact in dispute.   The
thrust of Plaintiffs' argument in support of summary judgment is
that Wells Fargo admitted in a brief before the Court that "the
minister" Ms. Turner referenced in conjunction with requesting

17

the replacement check was Bishop Willis of Garden of Prayer.[8]
First, as discussed in detail above, there is no evidence before
the Court establishing, or even supporting the inference, that
Ms. Turner reported to Wells Fargo that she transferred the
check to Bishop Willis before it was lost. On the contrary,
there is substantial evidence demonstrating that Ms. Turner
certified under oath to Wells Fargo that she had not transferred
the check to Bishop Willis, a minister at an entirely different
church than the church Ms. Turner represented.

Second, Plaintiffs fail to establish that Defendant's
alleged admission, which appears only in a brief, should be
considered by the Court to be a binding judicial admission.
Generally, for a lawyer's statement to constitute a "binding
admission of a party, any such statement must be 'deliberate,
clear, and unambiguous' before [the court] will afford it
preclusive effect." Fraternal Order of Police Lodge No. 89 v.
Prince George's County, MD, 608 F.3d 183, 190 (4th Cir. 2010)
(quoting Meyer v. Berkshire Life Ins. Co., 372 F.3d 261, 265 n.2
(4th Cir. 2004)). Accordingly, "legal memoranda, unlike
pleadings or affidavits, do not generally constitute binding

---

[8] Wells Fargo asserts that such statement, made in its reply
brief in support of Wells Fargo's summary judgment motion, was
made in error and is contradicted by Defendant's consistent
position in this case that the evidence before the Court
establishes that Ms. Turner certified to Wells Fargo that she
never transferred the check prior to its loss.

judicial admissions" absent language clearly indicating that the filer's intent is to make an admission.  Northern Ins. Co. of New York v. Baltimore Business Communications, Inc., 68 Fed. Appx. 414, 421 (4th Cir. 2003) (emphasis added); see Hecht v. American Bankers Ins. Co., No. 3:04cv98, 2005 WL 2716373, at *3 (W.D. Va. 2005) (noting that although "[a] district court has discretion to determine when a statement will be construed as a judicial admission," the Fourth Circuit "has generally ruled that a statement in an opposing party's brief does not create an issue of material fact sufficient to defeat summary judgment"). Here, although Wells Fargo's reply brief may demonstrate loose drafting and/or editing, the alleged admission highlighted by Plaintiffs is a far cry from a "deliberate" and "clear" admission.  To the contrary, the alleged admission conflicts with Defendant's otherwise clear and consistent position as demonstrated by the evidence before the Court:  Ms. Turner swore to Wells Fargo that the original check was lost prior to transfer, and only Ms. Turner and the two pastors at her church had any rights to such check.[9]

---

[9] Wells Fargo's alleged admission that Bishop Willis was "the minister" to whom Ms. Turner reported transferring the check is also in apparent conflict with Wells Fargo's prior statement in its opening brief that if Bishop Willis "had possession of [the original] check by August 22, 2008 and if Ms. Turner had disclosed that fact to the bank, her limited rights as a remitter would not have permitted her to stop payment." (Dkt. No. 19, at 10) (emphasis added).

For the reasons discussed above, Plaintiffs' motion for summary judgment is denied.

### IV. CONCLUSION

It appears undisputed that Garden of Prayer was a holder in due course of a $400,000 cashier's check that was not honored by Defendant Wells Fargo, and that Garden of Prayer suffered a very substantial and unfortunate financial loss. However, the evidence before the Court demonstrates the absence of a dispute as to a material fact relating to the representations made to Wells Fargo by an authorized claimant during the course of requesting a replacement cashier's check. Because the "lost" check was not presented to Wells Fargo until long after the claim for a replacement check became enforceable, Wells Fargo became "obliged to pay the amount of the check to the claimant" and such payment "discharge[d] all liability of [Wells Fargo] with respect to the check." Va. Code. Ann. § 8.3A-312(b)(4) (emphasis added). Because the check was permissibly dishonored by Wells Fargo under Virginia statute, "the claimant," not Wells Fargo, is obligated to pay the amount of the check to Plaintiffs if they are in fact holders in due course. Va. Code. Ann. § 8.3A-312(c).

For the reasons set forth above, Wells Fargo's summary judgment motion is **GRANTED**. Plaintiffs' cross-motion for summary judgment is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

_____ /s/ Mark S. Davis
                         Mark S. Davis
              UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
January  11  , 2012

21